# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBIN BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No: 23-2248 |
| ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE ) | |
| COUNTY/KANSAS CITY, KANSAS ) | |
| As Representative of Kansas City Board of ) | |
| Public Utilities, ) | |
| 701 N. 7th St. ) | **Jury Trial Demanded** |
| Kansas City, KS 66101 ) | |
| ) | |
| Serve: Brett Deichler ) | |
| Unified Government Clerk ) | |
| 710 N. 7th Street, Suite 323 ) | |
| Kansas City, KS 66101 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Robin Brooks ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Defendant Unified Government of Wyandotte County/Kansas City, Kansas states and alleges as follows:

### Nature of Action

1. This is an action for legal and equitable relief to address the deprivation of Plaintiff's civil rights based on disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* and §12203 ("ADA"), sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, U.S.C.A. § 2000e *et seq.* (Title VII), and race discrimination and retaliation in violation of 42 U.S.C. §1981.

## Parties

2. Plaintiff is a black female individual diagnosed with lupus and cancer and a resident of Kansas City, Kansas.

3. At all times pertinent to this Complaint, Plaintiff was an employee within the meaning of the ADA, Title VII, and 42 U.S.C. §1981.

4. Defendant Unified Government of Wyandotte County/Kansas City, Kansas ("Defendant") is a Kansas governmental entity. The Unified Government acts as a Representative of Kansas City Board of Public Utilities ("BPU"). BPU is a public utility, owned by Defendant Unified Government. BPU regularly conducts business in the state of Kansas and may be served by serving the Unified Government Clerk, Brett Deichler, at 710 N. 7th Street, Suite 323, Kansas City, Kansas 66101.

5. At all times relevant hereto, Defendant Unified Government is an employer governed by the ADA, Title VII, and 42 U.S.C. §1981.

6. On information and belief, Defendant Unified Government employs (and at all times relevant has employed) more than 200 employees.

## Jurisdiction and Venue

7. The claims alleged arise out of Plaintiff's employment with Defendant at its Kansas City, Kansas location.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States.

9. This Court has general personal jurisdiction over Defendant because it is subject to service of process in the State of Kansas and has affiliations with the State of Kansas that are so continuous and systematic as to render it essentially at home in this State. This Court has specific personal jurisdiction over Defendant because the claim against it arises out of its acts in the State

of Kansas that were purposefully directed at a resident of this State, including the commission of tortious acts.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim against Defendants occurred in this judicial district.

## Administrative Procedures

11. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity omission ("EEOC") on or about **April 18, 2022**. A true and correct copy of his charge is attached as **Exhibit A** and is incorporated herein by reference.

12. The EEOC alongside the Department of Justice ("DOJ") then issued Plaintiff a Notice of Right to Sue **March 8, 2023.** A true and correct copy of the Notices are attached as **Exhibits B and C** and is incorporated herein by reference.

13. This lawsuit has been timely filed with this Court and Plaintiff has fully complied with all administrative prerequisites before filing this action.

## General Allegations

14. Plaintiff began her employment with Defendant in August 2018 as a Senior Project Manager. Plaintiff was recruited from Florida by Plant Manager, William Johnson, with the promise of becoming a full-time employee enjoying all benefits within six (6) months.

15. Plaintiff relied on this promise from Mr. Williams and packed up her life in Florida to move to Kansas.

16. Approximately seven (7) months into her employment, Plaintiff began experiencing discrimination based on her race and sex when Chief Information Officer Gerry Sullivan was hired and placed in a supervisory position over Plaintiff.

17. Plaintiff is a black woman and Mr. Sullivan is a white man.

18. Mr. Sullivan made comments to Plaintiff about her employment, specifically saying "I have never worked around this much diversity in my life."

19. Mr. Sullivan also commented on Plaintiff's employment status by promising her that she would eventually become a full-time employee enjoying all benefits but then transition only white men to full-time employee status.

20. For example, a similarly situated white male, Robert Kemp, was hired at the same time as Plaintiff and was promptly transitioned to a full-time employee enjoying all benefits, like health insurance.

21. Mr. Sullivan said to white employees within earshot of Plaintiff, "you're going to be a full-time employee soon; we like the valuable ones."

22. One of the more blatantly racist and sexist comments Mr. Sullivan made to Plaintiff was when they were working on a project called Bill Print Project from April 2021 until September 2021. During a meeting in April 2021, Mr. Sullivan told Plaintiff that she needed to "know her place" and that he was going to "teach her, her place."

23. Mr. Sullivan also spoke in a condescending tone while asking Plaintiff, "If you're a smart project manager you wouldn't do that, are you a smart project manager?"

24. At one point during a meeting for this project, Mr. Sullivan rudely asked Plaintiff "are you stupid?" Mr. Sullivan never spoke to white male employees in such a manner.

25. Plaintiff reported Mr. Sullivan to Defendant's Human Resources Department ("HR") on April 26, 2021. HR did nothing. In fact, at a later date, the Vice President of HR, Ashley, told Plaintiff, "you should be happy you have a job."

26. In June 2021, Plaintiff noticed projects were being taken away from her.

27. Plaintiff also noticed that it was "put out on the floor" that Defendant was hiring a new project manager to replace her.

28. Just days before noticing these changes tragedy struck Plaintiff as she was diagnosed with cancer in May 2021.

29. Before her diagnosis, Plaintiff requested, at the direction of her physician, to work from home due to the COVID-19 pandemic and her weakened immune system because of her Lupus diagnosis; Defendants refused.

30. After her diagnosis, Plaintiff's doctor was even more concerned about Plaintiff's exposure level to viruses. COVID-19 was still spreading through the community at the time and with her weakened immune system due to both lupus and cancer now, Plaintiff was at extreme risk.

31. Throughout the COVID-19 pandemic in March 2020 until her constructive discharge Plaintiff submitted four (4) doctor's notes to Defendants requesting to work from home.

32. Plaintiff texted her supervisor, Bill Johnson, on June 23, 2021, and informed him of the cancer diagnosis and her physician's work from home orders. Mr. Johnson confirmed receipt of this message. In this same text message thread Plaintiff, again complained to Mr. Johnson about the racism and sexism she faced at the hands of Mr. Sullivan and that she believed she was not made a permanent employee because of the racism and sexism. Mr. Johnson ignored her complaint, and no investigation was ever initiated.

33. Although Plaintiff's physician wrote Defendants a note explaining Plaintiff was to work from home, Defendants flatly refused this request and denied her an interactive process and a reasonable accommodation.

34. Plaintiff could perform her job with or without an accommodation.

35. Most notably is that Plaintiff's white male co-workers who were similarly situated to Plaintiff were allowed to work from home even without having doctor's notes and despite completing similar work.

36. Plaintiff then went up the chain of command to formally complain of discrimination to the Director of Human Resources, Dennis Dumovich, who completely ignored her email by never responding.

37. Plaintiff was demoted to part-time status In July 2021.

38. While in the process to get attention from Defendants about her discrimination matter Plaintiff underwent cancer treatment.

39. In December 2021 Plaintiff could no longer tolerate the discriminatory behavior of Defendants and Mr. Sullivan, along with her unanswered complaints to HR.

40. Because of the discrimination, Plaintiff believed it was unsafe for her to continue her employment with Defendants knowing that if her lupus was aggravated, or her cancer came back, she would not be accommodated.

41. That same month of December 2021 Plaintiff was constructively discharged from her employment with Defendants.

42. Defendants made work so intolerable for Plaintiff that she had no other option but to leave employment. In effect, being constructively discharged because of her race, sex, and disability and in retaliation, Specifically:

    a. Mr. Sullivan's racist comments directed at Plaintiff;

    b. Plaintiff having her projects taken away;

    c. Plaintiff's employment being downgraded to part-time hours;

    d. The degrading treatment and comments directed at Plaintiff from Mr. Sullivan;

    e. Denying Plaintiff the opportunity to work from home;

    f. Denying Plaintiff the opportunity to participate in the interactive process for a reasonable accommodation

    g. The non-response from HR regarding Plaintiff's complaints; and

    h.   Plaintiff's white and/or male co-workers not facing similar treatment.

## Count I
### Race Discrimination and Retaliation, including Hostile Work Environment under 42 U.S.C. § 1981

43.    Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

44.    Plaintiff is a black female who was subjected to intentional discrimination because of her race.

45.    The continuing series of events planned and carried out by Defendant as described above, are discriminatory, abusive, and harassing.

46.    Defendant's misconduct, as alleged above, constitutes racial discrimination and retaliation in violation of 42 U.S.C. § 1981.

47.    But for her race, Plaintiff would not have been treated differently; her race is a "but for" causative factor.

48.    Plaintiff was subjected to disparate treatment by Defendant, including but not limited to, being subjected to a hostile work environment, being demoted, and ultimately being constructively discharged based upon her race, despite her qualifications and performance.

49.    Defendant's discrimination against Plaintiff based on her race was sufficiently severe or pervasive that it altered the terms or conditions of her employment and created an abusive working environment.

50.    Plaintiff was subjected to disparate treatment in that the terms and conditions of her employment were less favorable than her similarly situated white counter parts, including, but not limited to, the racially charged comments from Mr. Sullivan, the threat of non-promotion from Mr. Sullivan, and her complaints of the same being disregarded and ignored.

51. Plaintiff opposed and reported unlawful discrimination in the workplace by bringing these issues to management and/or Human Resources including but not limited to Bill Johnson and Dennis Dumovich.

52. Plaintiff's opposition to and reports of discrimination in the workplace constituted protected activities.

53. By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, by including but not limited to, being subjected to a hostile work environment, being demoted and ultimately being constructively discharged based upon her race, despite her qualifications and performance.

54. Defendant would not have taken material adverse actions against Plaintiff but for Plaintiff's act of opposing and reporting unlawful discrimination in the workplace.

55. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

56. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

57. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

58. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her complaint, finding that she has been subjected to unlawful race discrimination in violation of 42. U.S.C. §1981, for an award of compensatory and punitive damages, and for the reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## Count II
### Sex Discrimination, including Hostile Work Environment under Title VII

59. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

60. Plaintiff is black female who was subjected to discrimination because of her sex.

61. Plaintiff was subjected to disparate treatment by Defendant, including but not limited to, being subjected to a hostile work environment, being demoted and ultimately being constructively discharged based upon her sex, despite her qualifications and performance.

62. Defendant's discrimination against Plaintiff based on her sex was sufficiently severe or pervasive that it altered the terms or conditions of her employment and created an abusive working environment.

63. Plaintiff's sex was a motivating factor for Defendant's actions.

64. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

65. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her complaint, finding that she has been subjected to unlawful sex discrimination in violation of Title VII, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

### Count III
### Disability Discrimination and Denial of a Reasonable Accommodation under the Americans with Disabilities Act (42 U.S.C. §12101 *et seq.*)

66. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

67. Plaintiff is disabled, as defined by the ADA, and at all relevant times herein and/or Defendant regarded Plaintiff as being disabled.

68. Specifically, Plaintiff suffers from lupus and cancer.

69. At all relevant times prior to Plaintiff's constructive discharge, Defendants were aware that Plaintiff had an impairment and a record of having such impairments.

70. Plaintiff is a qualified individual as defined by the ADA, due to her disability and/or Defendant's perception that Plaintiff is disabled.

71. Plaintiff could perform the essential functions of her job duties for Defendant with or without reasonable accommodation.

72. Plaintiff's disability was a motivating factor for Defendant's actions.

73. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

74. Specifically, Defendants conduct in violation of the ADA included:
    a. Ignoring Plaintiff's complaints of disability discrimination.

    b. Refusing to involve Plaintiff in an interactive process for a reasonable accommodation.

    c. Demoting Plaintiff to part-time status.

    d. Refusing to promote Plaintiff so that she may have health insurance.

75. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III of her complaint, finding that she has been subjected to unlawful disability discrimination in violation of the ADA, for an award of compensatory and punitive damages, and for he reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## Count IV
### Retaliation under the American with Disabilities Act (42 U.S.C. §12203)

76. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

77. Plaintiff opposed and reported unlawful disability discrimination in the workplace by bringing these issues to management and/or Human Resources including but not limited to Bill Johnson, Dennis Dumovich. Rob Kemp, and Sperlynn Byers.

78. Plaintiff's opposition to and reports of discrimination in the workplace constituted protected activities.

79. By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, by including but not limited to, subjecting Plaintiff to a hostile work environment, demotions, and constructive discharge.

80. Plaintiff's opposition to and reports of discrimination were causally connected and a motivating factor for Defendant's actions.

81. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

82. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count IV of her complaint, finding that she has been subjected to retaliation in violation of the ADA, for an award of compensatory and punitive damages, and for he reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

### Count V
### Retaliation under Title VII

83. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

84. Plaintiff opposed and reported unlawful discrimination in the workplace by bringing these issues to management and/or Human Resources including but not limited to Bill Johnson and Dennis Dumovich.

85. Plaintiff's opposition to and reports of discrimination in the workplace constituted protected activities.

12

86. By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, by including but not limited to, Plaintiff being demoted and ultimately constructively discharged Plaintiff's employment.

87. Plaintiff's opposition to and reports of discrimination were causally connected and a motivating factor for Defendant's actions.

88. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

89. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count V of her complaint, finding that she has been subjected to retaliation in violation of Title VII, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

### **Prayer for Relief**

WHEREFORE, Plaintiff Robin Brooks respectfully requests that this Court enter judgment against Defendant Unified Government of Wyandotte County/Kansas City, Kansas for actual and special damages including emotional distress, back pay and benefits with interest, reinstatement or front pay and benefits, punitive damages, attorneys' fees and costs incurred, and for such other and further relief as the Court deems just and necessary.

**Demand for a Jury Trial**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

**Designated Place of Trial**

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully Submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

_____
Sarah J. Duggan
Kansas Federal Bar Number #79092
Attorney for Plaintiff, Robin Brooks
WYRSCH HOBBS & MIRAKIAN, P.C
1200 Main Street, Suite 2110
Kansas City, Missouri 64105
Tele: (816) 281-8733
sduggan@whmlaw.net