## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROBIN BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2248-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE | ) | |
| COUNTY, KANSAS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

On May 30, 2023, Robin Brooks filed suit against the Board of Public Utilities ("BPU") of the Unified Government of Wyandotte County/Kansas City, Kansas, alleging employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101 et seq. and 42 U.S.C. § 1981. See Pretrial Order (Doc. #49) filed May 22, 2024. This matter is before the Court on Defendant Kansas City Board of Public Utilities' Motion For Summary Judgment (Doc. #53) filed June 5, 2024. Plaintiff, who now proceeds pro se, has not responded to defendant's motion.[1] For reasons stated below, the Court sustains defendant's motion.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to

---

[1] Under District of Kansas Local Rule 6.1(d)(1), plaintiff had 21 days after defendant served its motion for summary judgment to file a response. Because defendant did not file and serve on plaintiff its Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment (Doc. #56) until June 7, 2024, plaintiff had until June 28, 2024 to respond to defendant's summary judgment motion. See D. Kan. Local Rule 56.1(d). As of August 6, 2024, plaintiff has not filed a response and defendant's motion is therefore unopposed.

interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

Under D. Kan. Local Rule 7.1(c), the Court may decide a motion as uncontested if a response is not filed by the applicable response deadline and will ordinarily grant the motion "without further notice."   A district court may not grant a motion for summary judgment, however, based solely on plaintiff's failure to respond.  See Issa v. Comp USA, 354 F.3d 1174, 1177–78 (10th Cir. 2003) (district court cannot grant summary judgment unless moving party meets initial burden under Rule 56 and demonstrates no genuine issue of material fact exists and it is entitled to judgment as matter of law).   Nevertheless, failure to respond to a summary judgment motion "waives the right to respond or to controvert the facts asserted in the summary judgment motion" and requires the Court to "accept as true all material facts asserted and properly supported in the summary judgment motion."   Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).

## **Factual Background**

The following facts are deemed admitted:[2]

Robin Brooks is a Black female.  The Unified Government is a municipal corporation organized and existing under the laws of the State of Kansas.  The BPU is an administrative agency of the Unified Government.  In August of 2018, defendant hired Brooks as IT Project Manager.

## I.    **Plaintiff's Work With Defendant**

Between August of 2018 and December of 2021, plaintiff provided IT services to defendant pursuant to contracts between defendant and three employment agencies—Panzer,

---

[2]      Under D. Kan. Rule 56.1(a), "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."  D. Kan. Rule 56.1(a).

AT-Tech Staffing Services, Inc.[3] and plaintiff's own entity, Tranquility International d/b/a EB4 Technologies ("EB4"). Defendant initially found plaintiff through Panzer. During her interview with defendant, plaintiff told Bill Johnson (defendant's General Manager) and Sperlynn Byers (defendant's acting Director of IT) that she preferred to work for defendant either (1) as an independent contractor, receiving income through a Form 1099 or (2) through her own company.

On July 25, 2018, defendant and AT-Tech entered into a Consulting Services & Direct Hire Agreement (the "AT-Tech Agreement") under which AT-Tech agreed to assign plaintiff to defendant to provide project management support for specific projects.[4]  AT-Tech Agreement (Doc. #54-19). Defendant paid AT-Tech $89.30 per hour for plaintiff's work. AT-Tech then paid plaintiff $61 per hour. Plaintiff turned in her timecard to AT-Tech and AT-Tech provided plaintiff payroll services, such as her paycheck.[5]  The AT-Tech Agreement specified that plaintiff "shall be considered for all purposes to be an independent contractor" of defendant and shall work "with little direct supervision." Id. at 4, 9. Plaintiff understood that she was working for AT-Tech and providing services to defendant under the AT-Tech Agreement.  Brooks Deposition (Doc. #54-2) at 46:2–7. Plaintiff's term under the AT-Tech Agreement began on August 13, 2018 and lasted through February 13, 2019. Brooks continued to work for defendant

---

[3]     During her deposition, plaintiff also refers to AT-Tech as "AppleOne," which she believes to be related entities.  See Deposition Of Robin Brooks (Doc. # 54-2) at 41:1–8.

[4]     Although plaintiff testified that defendant found her through Panzer, she entered her first contract to provide services to defendant through AT-Tech.

[5]     The AT-Tech Agreement further stated that AT-Tech "shall be responsible for the direct compensation of [plaintiff], including payment of wages, applicable federal, state and local taxes, and the payment of any required insurance (FUTA, SDI, Unemployment Insurance). AT-Tech shall be solely responsible for any insurance premium payments for Workers' Compensation, disability, other insurance, which is imposed upon AT-Tech and required as a consequence of AT-Tech's employment of [plaintiff]."  AT-Tech Agreement (Doc. #54-19) at 7.

throughout the remainder of 2019.  On June 20, 2020, she entered into a new contract to provide services to defendant through EB4.[6]

On June 20, 2020, defendant entered into a Master Services Agreement with EB4 for plaintiff's services (the "EB4 Agreement").  EB4 Agreement (Doc. #54-20).  In 2015 or 2017, in Wyoming, plaintiff incorporated EB4, a business entity through which she performs consulting services and business-to-business transactions.  Plaintiff serves as president and treasurer of EB4. Defendant's contract with EB4 states as follows:

- Defendant and EB4 agree that the contract "creates an independent contractor relationship" between defendant and EB4.  Id. at 5.

- "None of the Consultants provided by [EB4] are employees of the BPU but instead will be paid exclusively by [EB4] for all services performed for [EB4] by the Consultants."[7]  Id.

- Plaintiff is an "employee[] or consultant[]" of EB4.  Id. at 3.

- EB4 is responsible for "hiring, firing, and disciplining" its employees or consultants, as well as their payroll records and wage computations, including tax withholdings.  Id.

- The contract would continue for a period of six months and automatically renew for successive six-month terms unless either party terminated the relationship.  Id.

- Defendant would pay EB4 $89.30 per hour for plaintiff's work.  EB4's employees or consultants "will keep account of the number of hours worked by complying with any reasonable time-tracking system used by the BPU" and on at least a weekly basis, EB4 "will submit invoices to the BPU for services performed for

---

[6]     Neither party appears to dispute that plaintiff continued to work for defendant throughout 2019 and 2020; however, the record is unclear under which independent contractor agreement, if any, plaintiff performed work for defendant for the period between the end of the AT-Tech Agreement (February 13, 2019) and the date in which the EB4 Agreement began (July 6, 2020).

[7]     The EB4 Agreement defines "Consultants" as any personnel identified in Exhibit A of the Agreement.  EB4 Agreement (Doc. #54-20) at 5.  Exhibit A lists plaintiff as a "Contract Employee."  Id. at 1.

the BPU." <u>Id.</u> at 4.

- Defendant has the right to solicit and directly hire any consultant or employee of EB4 after a minimum of six months. <u>Id.</u> at 6.

At all times during plaintiff's work for defendant, Robert Kamp (Manager of Project Management and Delivery), supervised plaintiff. Kamp did not create plaintiff's work schedule. Although defendant typically expects its workers to work between 8:00 AM and 5:00 PM every day, plaintiff could work outside of those hours. If plaintiff wanted to work less hours in a week she could do so, but she would not be paid for the time off. In supervising project managers like plaintiff, Kamp does not "tell them how to run a project" and expects them to manage their own day-to-day activities. <u>Kamp Deposition</u> (Doc. #54-12) at 133:8–134:16. Plaintiff created her own project plan and ran meetings for her projects. She sought approval from her superiors only after she completed tasks or when it was time to move to the next task. During the COVID-19 pandemic in 2020 and into 2021, Kamp reassigned several of plaintiff's projects to himself and others because of budget cuts and because plaintiff did not "run" the projects well or give them the attention they deserved. <u>Id.</u> at 86:3–15.

Defendant's job posting for plaintiff's contractor position required (1) a bachelor's degree in IT, Engineering, Business or a related field, (2) five years of project management experience and (3) Professional Management Institute certification. <u>IT Project Manager Position Posting</u> (Doc. #54-11) at 2–3. Defendant expected that plaintiff had the required training for the position and only provided her the training required to understand its own systems. Defendant gave plaintiff a laptop to perform her work for defendant but no other materials. During her contract terms with defendant, plaintiff worked on outside projects and earned income from those projects. Defendant did not provide plaintiff any annual leave, vacation leave or retirement

benefits.  <u>Declaration Of Dennis Dumovich</u> (Doc. # 54-22), ¶ 4; <u>see also</u> <u>Brooks Deposition</u>

(Doc. #54-2) at 127:14–16, 130:11–13.  Defendant did not pay social security taxes for plaintiff.

## II.    Plaintiff's Complaints Of Discrimination

Plaintiff testified that on April 26, 2021, she made a complaint to Dennis Dumovich

(Human Resources Director) about the way that Jerry Sullivan (Chief Information Officer)

treated her.  <u>Brooks Deposition</u> (Doc. #54-2) at 113:8–19.  At her deposition, plaintiff could not

remember whether she made this complaint in person or through e-mail.  <u>Brooks Deposition</u>

(Doc. #54-2) at 113:13–15.  Dumovich directed defendant's IT department to conduct a search

through defendant's e-mail system for any email complaints from plaintiff; they did not find a

record of any complaints by plaintiff.  <u>Deposition Of Dennis Dumovich</u> (Doc. #54-23) at 42:12–

43:1.  Dumovich testified that plaintiff never formally or informally complained to him about

discrimination in either the spring or summer of 2021.  <u>Id.</u> at 59:7–15.

On July 23, 2021, referring to Sullivan, plaintiff sent Johnson (defendant's General

Manager) a text stating that she was working "under the leadership of a pure unadulterated racist

sexist asshole."  <u>Deposition Of William Johnson</u> (Doc. #54-21) at 36:8–37:18.  She ended the

text, "this isn't your problem but thank you for letting me vent."  <u>Id.</u> at 36:8–37:18; <u>see also</u>

<u>Plaintiff's Answers To Defendant's First Interrogatories</u> (Doc. #54-17) at 3, 10, 12.  In response

to the text, Johnson spoke with Sullivan about his interactions with plaintiff, followed up with

plaintiff and determined he did not need to take any further action.  Johnson also told plaintiff

that she should raise her complaints with the agency she contracted through.

## III.    Plaintiff's Health Conditions And Defendant's Remote Work Practices

Plaintiff has lupus.  In May of 2021, plaintiff was diagnosed with cancer.  On July 21 or

23, 2021, plaintiff had surgery to remove a cancerous growth.  Plaintiff worked remotely from

the date of her surgery until her doctor medically released her in August of 2021.

Several times throughout plaintiff's work for defendant, she requested to work from home.  Because the BPU is a critical infrastructure provider and remote work can expose the power grid to external security threats, defendant does not typically support remote work. Dumovich Deposition (Doc. #54-23) at 45:9–46:20.  Even during the COVID-19 pandemic, defendant rarely allowed its employees to work from home.  Id. at 44:18–20.

### Procedural History

On April 19, 2022, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), stating:

> From in or around December 2020 until in or around December 2021, I was harassed by my supervisor.  In or around March 2020, May 2021, July 2021, and September 2021, I requested reasonable accommodations for my disabilities and was denied each time.  From in or around February 2019, until on or around December 3, 2021, I was denied being brought on as a full-fledged employee while my co-workers of equal standing were.  On or around December 3, 2021, I was forced to quit due to a hostile work environment.  I believe I have been harassed, denied being hired full time, denied reasonable accommodations, and was forced to quit because of my race, Black, sex, female, disability, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.

Charge Of Discrimination (Doc. #54-24) at 2.  Plaintiff does not claim that she received a right-to-sue letter based on this charge.

On May 30, 2023, plaintiff filed this lawsuit, claiming (1) race discrimination, hostile work environment and retaliation in violation of 42 U.S.C. § 1981 (Count I), (2) sex discrimination and hostile work environment in violation of Title VII (Count II), (3) disability discrimination and denial of reasonable accommodations in violation of the ADA (Count III), (4) retaliation in violation of the ADA (Count IV) and (5) retaliation in violation of Title VII (Count V).  Pretrial Order (Doc. #49) at 14–15.

Plaintiff alleges that (1) defendant maintained a hostile work environment for Black workers because plaintiff's superiors repeatedly made racial comments toward and about plaintiff in the workplace, (2) defendant treated her disparately based on race and sex because Sullivan (Chief Information Officer) made several discriminatory comments to her and did not hire her as a full-time employee after six months of contract work, as promised, (3) defendant discriminated against her based on disabilities because it denied her requests to work from home and (4) by demoting her to part-time work and reassigning several of her projects, defendant retaliated against her for reporting discriminatory comments by Sullivan. Id. at 6–9.

On June 7, 2024, Magistrate Judge Brooks G. Severson sustained plaintiff's counsel's Second Amended Motion To Withdraw (Doc. #46) filed May 20, 2024. See Order Authorizing Withdrawal Of Counsel (Doc. #55). Because defendant had already filed its motion for summary judgment, Judge Severson (1) ordered withdrawing counsel to mail a copy of the pending summary judgment motion and supporting memorandum to plaintiff and (2) in accordance with D. Kan. Local Rule 56.1(d), directed defendant to file and mail to plaintiff, now appearing pro se, notice with information about how to respond to a summary judgment motion and the importance of deadlines. Order Authorizing Withdrawal Of Counsel (Doc. #55). On June 7, 2024, defendant filed the required notice and submitted a certificate of service stating that it had mailed the notice to plaintiff. Defendant's Notice To Pro Se Litigant Who Opposes A Motion For Summary Judgment (Doc. #56). The notice informed plaintiff that if she did "not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event [her] case may be dismissed and judgment entered in defendant's favor without a trial." Id. at 2. Plaintiff has not responded to defendant's motion for summary

judgment.

## Analysis

Plaintiff had until June 28, 2024 to file a response to defendant's motion for summary judgment.  Plaintiff failed to timely respond and defendant's motion is now unopposed. The Court therefore must determine whether judgment for the moving party is appropriate under Rule 56, Fed. R. Civ. P.

Plaintiff claims that defendant discriminated and retaliated against her in violation of Title VII (sex and race), 42 U.S.C. § 1981 (race) and the ADA (disability).  Defendant asserts that it is entitled to summary judgment on plaintiff's claims under the ADA because (1) it is not plaintiff's employer, (2) plaintiff did not exhaust administrative remedies and (3) plaintiff cannot establish a prima facie case of disability discrimination.  Defendant asserts that it is entitled to summary judgment on plaintiff's Title VII claims because plaintiff (1) did not exhaust administrative remedies and (2) cannot establish a prima facie case.  Defendant asserts that it is entitled to summary judgment on plaintiff's Section 1981 claims because plaintiff (1) cannot establish municipal liability and (2) cannot establish a prima facie case.  On all of plaintiff's claims, defendant also argues that the Court should grant summary judgment because it had non-discriminatory reasons for its actions.[8]

## I.     Whether Defendant Employed Plaintiff (Plaintiff's Title VII and ADA Claims)

Defendant argues that it is entitled to summary judgment on plaintiff's ADA claims

---

[8]     Defendant also argues that the Court should dismiss plaintiff's claims with prejudice because plaintiff perjured herself several times during discovery.  See Defendant's Memorandum In Support Of Summary Judgment (Doc. #54) filed June 5, 2024 at 44–45. Dismissal of an action with prejudice is a severe sanction which the Court employs only as a last resort.  Davis v. Miller, 571 F.3d 1058, 1061 (10th Cir. 2009).  Because the Court grants summary judgment on other grounds, the Court does not reach defendant's arguments for sanctions.

(Counts III and IV) because it was not plaintiff's employer.  Defendant did not separately argue that it is entitled to summary judgment on plaintiff's Title VII claims (Count II and V) for the same reason; however, because liability under both the ADA and Title VII require that plaintiff demonstrate an employer-employee relationship, the Court also analyzes whether summary judgment in favor of defendant on plaintiff's Title VII claims is appropriate on this ground.[9]  See Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek, 312 F.3d 1213, 1217 (10th Cir. 2002); see also Knitter v. Corvias Mil. Living, LLC, 758 F.3d 1214, 1226 n.8 (10th Cir. 2014).

As defined in Title VII and the ADA, an "employer" is "a person engaged in an industry affecting commerce who has 15 or more employees."  42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5).  The statutes define an employee as "an individual employed by an employer."  42 U.S.C. § 2000e(f); 42 U.S.C. § 12111(4).  In the ADA and Title VII contexts, the Tenth Circuit has approved the hybrid test approach to determine who qualifies as an employer.  See Bristol, 312 F.3d 1213, 1217 (10th Cir. 2002) (ADA); Lambertsen v. Utah Dep't of Corr., 79 F.3d 1024, 1028 (10th Cir. 1996) (Title VII).  In Lambertsen, the Tenth Circuit noted:

> Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the "means and manner" of the worker's performance.  However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer

---

[9]       Because defendant did not make this argument itself, the Court analyzes defendant's motion for summary judgment on plaintiff's Title VII claims separately in Section II.  The Court concludes that defendant is entitled to summary judgment on plaintiff's Title VII claims for reasons independent of the fact that plaintiff has not established that defendant was her employer.

pays social security taxes; and (11) the intention of the parties.  No single factor is conclusive.  Rather, the courts are to look at the totality of circumstances surrounding the working relationship between the parties.

Lambertsen, 79 F.3d at 1028 (internal citations omitted).

Defendant's evidence compels a legal conclusion that it was not plaintiff's employer.  To secure plaintiff's services, defendant entered into two written contracts—one with an employment agency (AT-Tech) that plaintiff worked through and one with a consulting agency (EB4) that plaintiff herself set up to earn income not only from defendant, but from other consulting projects.  Both agreements specify that plaintiff worked as an independent contractor. AT-Tech Agreement (Doc. #54-19) at 9; EB4 Agreement (Doc. #54-20) at 5.  Plaintiff received paychecks for her work for defendant through AT-Tech and EB4, not from defendant. Defendant did not offer annual leave, paid time off or retirement benefits to plaintiff.  Defendant did not pay social security taxes or withhold any taxes that were incident to an employment relationship.  Plaintiff retained a high degree of autonomy in the completion of her projects.  At her initial interview, plaintiff told defendant that she preferred to work on an independent contractor basis.

On balance and based on the totality of the circumstances, the Court concludes that as a matter of law, plaintiff was an independent contractor.  See Oestman v. Nat'l Farmers Union Ins. Co., 958 F.2d 303, 306 (10th Cir. 1992) (parties' agreements indicated intent to create independent contractor relationship); W. Anderson v. Choicepoint Servs., Inc., No. 01-2373, 2002 WL 1758899, at *4 (D. Kan. July 23, 2002), aff'd, 65 F. App'x 246 (10th Cir. 2003) (lack of annual leave, retirement benefits and payment of social security taxes—along with express agreement of independent contractor relationship—supported finding that plaintiff was independent contractor).

Accordingly, the Court sustains defendant's motion for summary judgment on plaintiff's ADA claims (Counts III and IV).  The Court also sustains defendant's motion for summary judgment on plaintiff's Title VII claims (Counts II and V) but addresses defendant's exhaustion and merits arguments in the following section because defendant did not on its own raise the argument that Title VII requires an employer relationship.

## II.    Plaintiff's Title VII Claims

As noted, the Court sustains defendant's motion for summary judgment on plaintiff's Title VII claims because plaintiff has not raised a genuine issue of material fact whether defendant was her employer.  See supra Section I.  The Court separately assesses defendant's additional arguments relating to plaintiff's Title VII claims and finds independent grounds to grant summary judgment to defendant on these claims.

Plaintiff claims that defendant discriminated against her on the basis of race and sex, maintained a hostile work environment and retaliated against her in violation of Title VII (Counts II and V).  Defendant argues that (1) plaintiff has not exhausted administrative remedies and (2) cannot establish a prima facie case of discrimination, hostile work environment or retaliation.

### A.    Exhaustion Of Title VII Claims

Defendant argues that plaintiff did not timely exhaust administrative remedies as required by statute.   To assert claims under Title VII for disparate treatment and hostile work environment, plaintiff must file a charge of discrimination within 300 days of the dates that she alleges the discriminatory conduct took place.  42 U.S.C.A. § 2000e-5.  Under Title VII, if a plaintiff fails to timely file an EEOC charge regarding each discrete employment incident or adverse action, defendant may raise the affirmative defense of failure to exhaust administrative

remedies.  Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185 (10th Cir. 2018); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  To exhaust, plaintiff generally must present her claims to the EEOC and receive a right-to-sue letter based on that charge.[10]  Lincoln, 900 F.3d at 1181.  The charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.  Id.  The charge tells the EEOC what to investigate, provides the opportunity to conciliate the claim and gives the charged party notice of the alleged violation. See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  The timeliness requirement is like a statute of limitations, i.e. subject to waiver, estoppel and equitable tolling.  Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).

Plaintiff filed her EEOC charge on April 19, 2022.  Charge Of Discrimination (Doc. #54-24).  As a matter of law, any claim of discrimination that occurred before June 23, 2021 (i.e. 300 days before plaintiff filed her charge) is therefore time-barred.  Morgan, 536 U.S. at 113 (each discrete discriminatory act starts new clock for filing charges alleging that specific act).

Defendant specifically argues that plaintiff did not timely file her charge regarding the following allegations related to her Title VII claims that (1) defendant maintained a hostile work environment and treated her disparately because Sullivan made racially discriminatory comments in April of 2021 and (2) defendant retaliated against plaintiff for reporting the discriminatory conduct by not hiring her after six months of contract work, demoting her to part-time work and

---

[10]     The record contains no evidence that before filing suit, plaintiff received a right-to-sue letter from the EEOC.  If plaintiff did not receive a right-to-sue letter, defendant has an "effective affirmative defense."  Bryant v. United States Postal Serv., 741 F. App'x 602, 603–04 (10th Cir. 2018).

taking away several of her projects in June of 2021.[11]  See Defendant's Memorandum In Support

Of Summary Judgment (Doc. #54).

        1.      Exhaustion Of Disparate Treatment And Retaliation Claims (Counts II and V)

For plaintiff's disparate treatment and retaliation claims, only events which occurred after

June 23, 2021 are actionable.  As a result, the following events are not independently actionable:

(1) Sullivan's alleged discriminatory comments made during a meeting in April of 2021 and

(2) defendant's decision not to hire plaintiff as a full-time employee after she had worked as a

contractor for six months (i.e. that defendant did not hire plaintiff in a full-time capacity by

February 13, 2019—six months after August 13, 2018 when plaintiff's term under the AT-Tech

Agreement (Doc. #54-19) began).  Plaintiff may only use these prior events as background

evidence in support of her timely claims.  Accordingly, plaintiff's only remaining claim is Count

V—that defendant retaliated against her when it allegedly reassigned several of her projects and

demoted her to part-time work.

        2.      Exhaustion Of Hostile Work Environment Claim (Count II)

Plaintiff must file a hostile work environment claim under Title VII within 300 days of

the unlawful employment practice.  See Morgan, 536 U.S. at 117.  But unlike disparate treatment

and retaliation, a hostile work environment claim is composed of a series of separate acts that

collectively constitute one "unlawful employment practice."   Id. (citing 42 U.S.C. § 2000e-

5(e)(1)).  To determine liability, if an act that contributes to the claim occurs within the filing

period, the Court may consider the entire time period of the hostile environment.  Morgan, 536

---

[11]    Defendant separately argues that plaintiff did not timely exhaust administrative remedies for her ADA claims; the Court does not address these arguments because it sustains defendant's motion for summary judgment on plaintiff's ADA claims on separate grounds.  See supra Section I.

U.S. at 117.

Plaintiff alleges that by making racially discriminatory comments, Sullivan harassed her from seven months into her employment (i.e. March of 2018) through December of 2021.  See Pretrial Order (Doc. #49) at 6–9.  Plaintiff's charge states that her supervisor "harassed" her "[f]rom in or around December 2020 until in or around December 2021."  Charge Of Discrimination (Doc. #54-24) at 2.  Because plaintiff's hostile work environment claim includes events that could have occurred within the filing period (i.e. after June 23, 2021), the Court may consider events that contribute to the hostile work environment even if they fall outside the 300-day period.  The Court addresses the merits of this claim in the next section.

B.      Merits Of Hostile Work Environment Claim Under Title VII  (Count II)

Count II claims that defendant subjected plaintiff to a hostile work environment on the basis of race and sex.  Pretrial Order (Doc. #49) at 15.  Defendant asserts that it is entitled to summary judgment because plaintiff has not offered any evidence to support it and the record reveals no genuine issue of material fact on that issue.

To establish a prima facie case of hostile work environment, plaintiff must show that defendant discriminated against her because of race and sex.  See Sanderson v. Wyo. Highway Patrol, 976 F.3d 1164, 1174 (10th Cir. 2020) (sex-based hostility); Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957 (10th Cir. 2012) (race-based hostility).  Further, plaintiff must demonstrate "that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of [her] employment and created an abusive working environment."  Sanderson, 976 F.3d at 1174.  To establish severe or pervasive discrimination, plaintiff must (1) subjectively perceive "the conduct to be severe or pervasive" and (2) "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and

insult." Throupe v. Univ. of Denver, 988 F.3d 1243, 1252 (10th Cir. 2021). The Court analyzes severity and pervasiveness by looking at the totality of the circumstances and "consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012). Isolated incidents of discriminatory conduct and "run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces" are insufficient to support a claim for hostile work environment. Throupe, 988 F.3d at 1252.

Plaintiff has not raised a genuine issue of material fact whether defendant maintained a sex-based or race-based hostile work environment. She has not presented evidence that defendant's workplace is permeated with discriminatory intimidation, ridicule and insult or that the conduct she allegedly endured amounted to more than isolated incidents of discriminatory conduct. Absent additional evidence, she cannot string together the discrete events that comprise her retaliation and discrimination claims to create a hostile work environment claim. On this record, no reasonable jury would conclude that the alleged discrimination was so pervasive as to alter the conditions of her employment. Defendant is therefore entitled to summary judgment on plaintiff's hostile work environment claim.

C.    Retaliation (Count V)

To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse and (3) a causal connection existed between

her protected activity and the materially adverse action.[12]  Payan v. United Parcel Service, 905 F.3d 1162, 1172 (10th Cir. 2018).  Once plaintiff has established her prima facie case, under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the burden shifts to defendant to articulate a legitimate and nonretaliatory reason for its actions.  Id. From there, the burden returns to plaintiff to show that defendant's reason is pretextual.  Id. at 804.

Plaintiff alleges that she reported discrimination and harassment on three occasions: (1) on April 26, 2021 to defendant's Director of Human Resources, (2) on June 23, 2021 in a text to Johnson and (3) at some unspecified date to Kamp.  Pretrial Order (Doc. #49) at 7–8.  Plaintiff asserts that in retaliation for her internal complaints, defendant reassigned several of her projects in June of 2021 and demoted her to part-time work in July of 2021.  Id.

Defendant argues that plaintiff cannot establish a prima facie case of retaliation because (1) she has not produced evidence that she engaged in protected opposition, (2) she has not proven that she suffered an adverse action and (3) she cannot show a causal connection between her alleged protected opposition and defendant's decisions to not hire her in a full-time capacity or reassign her projects.  Defendant also asserts that it had legitimate and non-discriminatory reasons for its actions.

---

[12]     In Muldrow v. City of St. Louis, Missouri, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024), the Supreme Court recently held that a plaintiff bringing a claim under Title VII's discrimination prong no longer must show that the harm incurred was "significant" or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar," but instead must show that they suffered "some harm" with respect to an identifiable term or condition of employment.  Id. at 969, 974.  In Muldrow, the Supreme Court specifically distinguished adverse employment action in the context of disparate treatment claims and materially adverse employment action in the context of retaliation claims.  It reaffirmed that a plaintiff bringing a retaliation claim must still show that a retaliatory action qualifies as "materially adverse."  Id. at 969.

1.     Protected Opposition To Discrimination

Defendant argues that plaintiff has failed to demonstrate that she engaged in protected opposition to discrimination.  "Protected opposition can range from filing formal charges to voicing informal complaints to superiors."  Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015 (10th Cir. 2004).  The Court considers each of plaintiff's three purported instances of protected opposition.

First, plaintiff claims that on April 26, 2021, she complained to defendant's Director of Human Resources about discrimination by Sullivan.  The record contains no evidence that plaintiff in fact made this complaint.  Searches through defendant's e-mail system did not yield any results and the purported recipient of this complaint (Dumovich) testified that he had no recollection of receiving either a written or verbal complaint from plaintiff regarding discrimination.

Second, the record indicates that on June 23, 2021, plaintiff sent a text to Johnson complaining about discrimination by Sullivan.  Defendant argues that in the same text plaintiff also told Johnson that Sullivan's conduct was not his problem, so she did not intend to engage in protected activity but instead merely sought to vent about the situation.  Regardless how plaintiff conditioned the text, the message qualifies as protected opposition because she voiced an informal complaint to her superior.  The record therefore raises a genuine issue of material fact whether plaintiff engaged in protected opposition to discrimination when she texted Johnson.

Third, plaintiff claims that on some unspecified date or dates, she "complained" to her supervisor, Kamp, "about racism and sexism."  Pretrial Order (Doc. #49) at 8.  "Although no magic words are required, to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice."  Hinds v.

Sprint/United Management Co., 523 F.3d 1187, 1203 (10th Cir. 2008) (citing in part Anderson v. Academy School Dist. 20, 122 Fed. App'x. 912, 916 (10th Cir. 2004) (vague references to discrimination without indication that race, color, religion, gender or national origin motivated misconduct does not constitute protected activity)).   Because the record contains no evidence about the specific content of plaintiff's purported complaint to Kamp, a reasonable jury could not conclude that plaintiff in fact engaged in protected activity when she complained to Kamp.

2.     Materially Adverse Actions

Defendant argues that plaintiff cannot show that she suffered a materially adverse action and that even if she can, it had non-discriminatory reasons for its actions.

Plaintiff must show that the challenged action was materially adverse, i.e. it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. See Burlington N. Santa Fe Ry Co. v. White, 548 U.S. 53, 68 (2006).   Deciding whether an employer's actions are "materially adverse" is a case-specific exercise that requires an objective inquiry that does not turn on a plaintiff's personal feelings.   Semsroth v. City of Wichita, 555 F.3d 1182, 1184–85 (10th Cir. 2009).   Plaintiff asserts that because of protected activity, she suffered the following materially adverse actions: (1) defendant reassigned her projects and (2) defendant demoted her to part-time work.

a.     Reassignment Of Projects

Plaintiff claims that in June of 2021, after she reported discrimination, defendant took several projects away from her.   The Court assumes that defendant did so in June of 2021, after plaintiff sent the text to Johnson dated June 23, 2021.   Defendant argues that it had non-discriminatory reasons for the purported reassignments and has presented evidence that it had legitimate business reasons for reassigning plaintiff's projects, including budget cuts and

plaintiff's slow performance.  Absent a genuine issue of material fact on this issue, the Court sustains defendant's motion for summary judgment on this claim.

> b.      Demotion To Part-Time Work

Plaintiff claims that after she reported discrimination in July of 2021, defendant demoted her to part-time work.  Defendant argues that plaintiff has not presented evidence that defendant allowed her to work only part time.[13]  On this record, a reasonable jury could not conclude that plaintiff in fact suffered a materially adverse employment action.  The Court sustains defendant's motion for summary judgment on this claim.

In sum, the Court sustains defendant's motion for summary judgment on plaintiff's Title VII claims because (1) defendant was not plaintiff's employer as required under Title VII, see supra Section I, (2) plaintiff did not administratively exhaust her claims of disparate treatment, see supra Section II.A. and (3) plaintiff has not established a prima facie case of hostile work environment or retaliation.

**III.    Plaintiff's Section 1981 Claims (Count I)**

Plaintiff alleges that in violation of 42 U.S.C. § 1981, defendant (1) created a racially hostile work environment for plaintiff when Sullivan repeatedly made racially discriminatory comments toward and about plaintiff and (2) by demoting her to part-time work and taking away several of her projects, retaliated against her for reporting racially discriminatory conduct by Sullivan.  Pretrial Order (Doc. #49) at 7–8, 14–15.  Defendant asserts that it is entitled to summary judgment on plaintiff's claims under Section 1981 because (1) plaintiff cannot establish municipal liability, (2) plaintiff cannot establish a prima facie case of discrimination,

_____

[13]     Defendant makes this argument in response to plaintiff's claim of race discrimination under Section 1981; however, the Court also construes plaintiff's claim that defendant demoted her to part-time work as an allegation of retaliation under Title VII.

hostile work environment or retaliation and (3) it had a non-discriminatory reason for its actions.

The elements of a disparate treatment claim are the same whether brought under Section 1981, Section 1983 or Title VII.  Mann v. XPO Logistics Freight, Inc., 819 F. App'x 585, 594 n.15 (10th Cir. 2020); Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194 (10th Cir. 2011). Section 1981 protects employees from racial discrimination both in entering an employment contract and enjoying the benefits, privileges, terms and conditions of employment.  Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1134 (10th Cir. 2004).

A.    Municipal Liability

A plaintiff may not assert a Section 1981 claim against a municipal entity unless she establishes that a government policy or custom caused her injuries.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978); Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1137 (10th Cir. 2006) (doctrines limiting vicarious liability of municipal entities under Section 1983 also restrict claims made under Section 1981).  A plaintiff may establish such a municipal policy or custom by proving facts that demonstrate one of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted).  A court cannot impose liability under Monell based on "a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993) (citation omitted).

           1.      Disparate Treatment Claim

The Pretrial Order (Doc. #49) does not allege an "existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Butler, 992 F.2d at 1055. Moreover, plaintiff does not allege any facts that a "specific policy or custom was the moving force behind the alleged violation." Dalcour v. City of Lakewood, 492 F. App'x 924, 930 (10th Cir. 2012).

To defeat summary judgment, plaintiff may prove that the alleged discrimination was the result of a "continuing, persistent and widespread" custom that is so commonly used so as "to have the force of law." Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1041 (10th Cir. 1993). To prove the existence of such a "continuing, persistent and widespread" custom, plaintiffs most commonly offer evidence suggesting that the municipality mistreated similarly situated individuals in a similar way. See id. Indeed, a plaintiff's "failure to allege the existence of similar discrimination as to others seriously undermines her claim that the City maintained a custom of discriminatory personnel practices." Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995).

Here, plaintiff does not present evidence that defendant mistreated other Black employees or contractors in a similar way. While plaintiff alleges that defendant allowed similarly situated white coworkers to work from home, plaintiff has not offered proof that in a continuous, persistent or widespread manner, defendant denied requests from Black employees to work from home. To the contrary, the undisputed facts demonstrate that defendant typically does not allow remote work, even during COVID. Accordingly, the record provides no basis on which a

rational fact finder could conclude that defendant racially discriminated against its Black employees or contractors in such a widespread manner as to constitute a policy or custom.

The record contains no evidence that defendant discriminated against plaintiff because of a policy or custom. The Court therefore sustains defendant's motion for summary judgment on plaintiff's Section 1981 disparate treatment claim (Count I).

2.     Retaliation

As with plaintiff's discrimination claims, for municipal liability to arise under Section 1981 for plaintiff's retaliation claim, plaintiff must demonstrate that defendant's officials retaliated against her pursuant to a "custom or policy" of retaliation. Randle, 69 F.3d at 446 n.6. Plaintiff has not created a genuine issue of material fact whether defendants retaliated against her pursuant to an official policy or custom. Accordingly, the Court sustains defendant's motion for summary judgment on plaintiff's Section 1981 retaliation claim (Count I).

Upon review of the record and for substantially the reasons stated in Defendant's Memorandum In Support Of Summary Judgment (Doc. #54) filed June 5, 2024, the Court finds that no genuine issue of material fact precludes summary judgment for defendant on all of plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant Kansas City Board Of Public Utilities' Motion For Summary Judgment (Doc. #53) filed June 5, 2024 is **SUSTAINED**.

Dated this 6th day of August, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge